IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE:<br><br>Kirk S. Stephan, LLC,<br><br>    Debtor.<br>_____<br><br>Kirk S. Stephan,<br><br>    Appellant,<br>  v.<br><br>Wells Fargo Bank, N.A.,<br><br>    Appellee. | HON. JEROME B. SIMANDLE<br><br>Civil No. 13-3937 (JBS)<br><br>ON APPEAL FROM AN ORDER OF THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY<br><br>[Case No. 12-17333 (GMB)]<br><br>**OPINION** |

APPEARANCES:

Nicholas S. Herron, Esq.
Law Offices of Seymour Wasserstrum
205 W. Landis Ave.
Vineland, NJ 08360
    Attorney for Appellant Kirk S. Stephan

Angela C. Pattison, Esq.
728 Marne Hwy.
Suite 200
Moorestown, NJ 08057
    Attorney for Wells Fargo Bank, N.A.

**SIMANDLE,** Chief Judge:

## I. INTRODUCTION

This action comes before the Court on the debtor's appeal from Bankruptcy Case No. 12-17333, in which the Bankruptcy Court issued an order on May 20, 2013 denying the debtor's motion to preclude distribution to Wells Fargo on debtor's second

1

mortgage. The Court heard oral argument on February 4, 2014. For the following reasons, the Bankruptcy Court's May 20, 2013 Order is affirmed. Wells Fargo is entitled to distribution on the second mortgage claim.[1]

## II. BACKGROUND

### A. Factual Background

Appellant Kirk S. Stephan filed for Chapter 13 bankruptcy protection on March 22, 2012. Before filing for bankruptcy, Stephan had obtained two mortgages on his residence through Wells Fargo Bank, N.A. ("Wells Fargo"). When he filed the bankruptcy action, the residence had a value of $320,000.00, he owed $386,381.06[2] on the first mortgage, and he owed $64,088.98 on the second mortgage. He was in default on both mortgages. The second mortgage is the subject of this appeal.

Stephan filed a motion to reclassify the second mortgage as unsecured and to prohibit Wells Fargo from receiving any distributions from the Chapter 13 trustee for the second mortgage. He argued that the second mortgage was unsecured

---

[1] The amount of the distribution is not an issue before the Court.
[2] The amount of the first mortgage was $337,500.00. (Appellant Br. at 3.) The payoff figure on the first mortgage at the time the bankruptcy case was filed was $386,381.06. (Id. at 9.) The difference in these amounts is immaterial to the present appeal because, in either case, the value of the first mortgage exceeds the property's value. (See Hr'g Tr. 13:13 (Bankruptcy Court stating that "there's not enough security to cover [Wells Fargo's] interest" in the second mortgage).)

2

because the value of the first mortgage exceeded the value of the property. Stephan argued that the second mortgage was unenforceable because, under New Jersey state law, N.J. Stat. Ann. § 2A:50-2, the mortgage holder must foreclose on the property before any action to recover a personal judgment can be commenced. Stephan argued that Wells Fargo could not proceed with foreclosure and, thus, had no right to payment.

Wells Fargo objected to this motion on the grounds that the debtor cannot attack the reclassified, unsecured claim as unenforceable where that claim was already deemed allowed in order to invoke § 506(a) of the Bankruptcy Code.

The Bankruptcy Court heard Stephan's motion on May 7, 2013. At the hearing, the Bankruptcy Judge noted that Wells Fargo could not file a foreclosure action because of the automatic stay pursuant to the bankruptcy proceedings, not because Wells Fargo had lost any rights under state law (Hr'g Tr. at 6:6-13); debtor's plan treats the second mortgage as an unsecured claim because of its lack of equity (id. at 11:7-10); and bankruptcy law allows the debtor to treat a secured claim as unsecured, but does not allow the debtor to not pay the unsecured claim (id. at 13:7-15). The Bankruptcy Judge concluded that Wells Fargo's second mortgage should be considered an unsecured claim and that Wells Fargo was entitled to the same distribution as other unsecured creditors. (Id. 11:9-21.)

On May 20, 2013, the Bankruptcy Court issued an order ("May 20, 2013 Order") denying Stephan's motion. The May 20, 2013 Order constitutes a final order of the Bankruptcy Court. This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a)(1).

**B. Parties' Arguments**

Stephan raises three issues on appeal: whether the Bankruptcy Court erred in failing to make factual determinations and provide a clear basis for its legal conclusions; whether the Bankruptcy Court erred in interpreting New Jersey law; and whether New Jersey law prohibits a second mortgagee from collecting on its note without completing a foreclosure process.

Stephan argues that the Bankruptcy Court "failed to understand that the opportunity to foreclose existed well before the underlying case was filed" and "did not clearly state why the New Jersey statutory deficiency framework could not be adhered to in the bankruptcy." (Appellant Br. at 3-4.) Stephan argues that the Bankruptcy Court "did not make any factual determinations" and "needed to make a finding of value as to the subject property." (Id. at 5.) Stephan argues that the Bankruptcy Court erred in holding that Wells Fargo could share in distributions because the second mortgage is unenforceable due to Wells Fargo's failure to file a foreclosure action.

4

Wells Fargo argues that there are two questions on appeal: whether the Bankruptcy Court correctly concluded that the Wells Fargo second mortgage claim was derived from the creditor's lien, not the bank's stayed deficiency claim, and whether the Bankruptcy Court made all of the necessary factual findings and fully explained its legal conclusions. Wells Fargo asserts that the Bankruptcy Court "correctly concluded that the New Jersey statute establishing the procedure for foreclosure deficiency actions was inapplicable to the reclassified claim held by Wells Fargo . . . ." (Appellee Br. at 3.)

In Reply, Stephan emphasizes that the Bankruptcy Court "was absolutely silent as to a key factual determination [as to the value of the property] and failed to clearly articulate the legal basis for its holding." (Appellant Reply at 1.) He also asserts that the Bankruptcy Court committed reversible error in failing to acknowledge that Wells Fargo cannot collect upon its note under New Jersey law.

### III. ANALYSIS

#### A. Standard of Review

Bankruptcy Rule 8013 provides that a district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. The Rule further provides that "[f]indings of fact, whether based on oral or documentary

evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013. Essentially, the district court must "review the bankruptcy court's legal determinations de novo, its factual findings for clear error and its exercise of discretion for abuse thereof." In re Am. Pad & Paper Co., 478 F.3d 546, 551 (3d Cir. 2007).

### B. The Automatic Stay

Stephan argues that Wells Fargo is not entitled to distribution on the second mortgage because, under New Jersey law, a mortgage holder must first file a foreclosure action before seeking any deficiency. The Bankruptcy Court correctly held that this argument lacks merit.

New Jersey law specifies the "Order of proceedings," mandating that "all proceedings to collect any debt secured by a mortgage on real property, shall be as follows: First, a foreclosure of the mortgage; and Second, an action on the bond or note for any deficiency . . . ." N.J. Stat. Ann. § 2A:50-2. This statute does not apply here. Wells Fargo did not initiate proceedings against Stephan; Stephan filed for bankruptcy and Wells Fargo submitted a proof of claim.

Stephan's filing of a bankruptcy action stayed all proceedings against him, including foreclosure proceedings. A

bankruptcy petition "operates as a stay, applicable to all entities, of -- the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title . . . ." 11 U.S.C. § 362. The automatic stay "stop[s] all collection efforts, all harassment, and all foreclosure actions." Mar. Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1204 (3d Cir. 1991). See also In re Ward, 837 F.2d 124, 126 (3d Cir. 1988) (foreclosure sale "was conducted in violation of the stay," and thus "was void and without effect"); Matter of Cappadonna, 154 B.R. 639, 642 (Bankr. D.N.J. 1993) (the foreclosure judgment "was in violation of the automatic stay" and therefore was "void ab initio"). Essentially, Wells Fargo could not file a foreclosure action after Stephan filed his bankruptcy petition.

Stephan argues that the Bankruptcy Court "failed to understand that the opportunity to foreclose existed well before the underlying case was filed" and "did not clearly state why the New Jersey statutory deficiency framework could not be adhered to in the bankruptcy." (Appellant Br. at 3-4.) Stephan has cited no law requiring Wells Fargo to file for foreclosure before he filed for bankruptcy and, if Wells Fargo had initiated such a proceeding, Stephan's bankruptcy petition would have

stayed it.³ Moreover, the Bankruptcy Court clearly stated at the hearing that the New Jersey statutory deficiency framework could not be adhered to "because [Stephan] filed bankruptcy and there's an automatic stay in place." (Hr'g Tr. 4:15-16.) The Bankruptcy Court also explained that the New Jersey law is "a procedural requirement that they do in order to proceed in a certain way in State Court. We're not there . . . . They haven't foreclosed on their mortgage so we don't know whether they're seeking a deficiency." (Hr'g Tr. 17:23-18:1.) Stephan erroneously cites Bus. Loan Ctr., Inc. v. Nischal, 331 F. Supp. 2d 301, 308 (D.N.J. 2004) for the proposition that the foreclosure first requirement is substantive, not procedural; Nishcal is inapposite because the Nishcal court held that the foreclosure first requirement was substantive in the context of a conflicts-of-law analysis where application of New Jersey law, instead of Georgia law, would substantially affect the result.

Stephan's bankruptcy petition did not obviate Wells Fargo's rights under state law. See In re DiClemente, Civ. 12-1266 (FLW), 2012 WL 3314840, at *6 (D.N.J. Aug. 13, 2012) (bank's "right to foreclose on the Property might be stayed by § 362,

---

³ Stephan cites In re Karagiannis, 453 B.R. 548 (Bankr. D.N.J. 2011), which is inapposite because, in that case, a foreclosure suit was initiated years before the bankruptcy petition, the properties were sold for a nominal value of $100 per property, and the bankruptcy court held that, under New Jersey law, the debtor had a right to a fair market value hearing.

8

but it is not eviscerated"); cf. Butner v. United States, 440 U.S. 48, 56 (1979) ("the federal bankruptcy court should . . . ensure that the mortgagee is afforded in federal bankruptcy court the same protection he would have under state law if no bankruptcy had ensued" and should avoid the "inequity of depriving a mortgagee of his state-law security interest when bankruptcy intervenes").

Stephan cites In re Jason Realty, L.P., 59 F.3d 423, 427 (3d Cir. 1995), which notes that "[a] federal court in bankruptcy is not allowed to upend the property law of the state in which it sits." The issue in Jason Realty was whether the Bankruptcy Court had disregarded New Jersey law in holding that an assignment was a collateral pledge as opposed to an absolute assignment, as New Jersey law would hold. The Bankruptcy Court in this case did not disregard New Jersey law regarding substantive property rights; it merely held that the bankruptcy stay precluded Wells Fargo from filing a foreclosure action while the bankruptcy was pending. That legal conclusion was correct.

Stephan argues that the second mortgage claim is unenforceable under New Jersey law due to Wells Fargo's failure to first file a foreclosure action and, thus, it is not allowed. This argument lacks merit because it disregards the automatic stay provision and misconstrues the enforceability provision.

A claim that "is unenforceable against the debtor and property of the debtor, under any agreement or applicable law" is not allowed. 11 U.S.C. § 502. This provision means that "with limited exceptions, any defense to a claim that is available outside of the bankruptcy context is also available in bankruptcy." Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443, 450 (2007). This provision would be relevant if, for example, Wells Fargo's second mortgage claim were barred by the statute of limitations. See, e.g., In re Keeler, 440 B.R. 354, 360 (Bankr. E.D. Pa. 2009) ("if as of the date of the debtor's bankruptcy filing a creditor's claim was barred by the applicable statute of limitations, then the claim must be disallowed"). Section 502 does not, however, apply to Wells Fargo's second mortgage claim because Stephan has not identified any defense that would make that claim unenforceable.

As explained above, the bankruptcy stay precludes a foreclosure action. The bankruptcy stay does not make a mortgage claim unenforceable. The Bankruptcy Court's holding that the second mortgage was an allowed claim under § 502 was correct.

### C. Factual Findings

Stephan argues that the Bankruptcy Court "did not make any factual determinations" and "needed to make a finding of value as to the subject property." (Appellant Br. at 5.) The

Bankruptcy Court's factual findings were sufficiently stated upon the record and they were not clearly erroneous.

Stephan's original motion asked the Bankruptcy Court to reclassify the second mortgage as unsecured and to prohibit Wells Fargo from receiving any distributions from the Chapter 13 trustee for the second mortgage. Stephan did not seek a determination of the property value and, in litigating his motion, the parties did not dispute the property's value, which the debtor placed at $320,000.00. The Bankruptcy Court needed to make legal determinations regarding whether Wells Fargo's failure to initiate a foreclosure action on the second mortgage precluded distribution and whether the second mortgage was unsecured. It did not need to make detailed factual findings of the precise value of the residence because there was no dispute; the first mortgage amount of $386,381.06 far exceeded the claimed property value of $320,000.00, and neither party claimed that either figure was incorrect. Cf. In re McDonald, 205 F.3d 606, 608-09 (3d Cir. 2000) (courts can "resolve certain legal disputes in advance of factual disputes . . . . [I]n the context of a Chapter 13 bankruptcy involving comparatively small sums of money, the parties understandably wanted to avoid expenses, such as the cost of expert testimony, that would have been incurred contesting the value of the home if in the end the evidence produced would be legally irrelevant").

For purposes of adjudicating Stephan's motion, the Bankruptcy Court merely needed to determine whether the value of the first mortgage exceeded the property's value and it did so, stating that "there's not enough security to cover [Wells Fargo's] interest" in the second mortgage. (Hr'g Tr. 13:13.) Neither party disputed this finding. Stephan cited <u>In re Sublett</u>, 895 F.2d 1381, 1384 (11th Cir. 1990) for the proposition that "[i]f the bankruptcy court's factual findings are silent or ambiguous as to an outcome determinative factual question, the district court . . . must remand the case to the bankruptcy court for the necessary factual determination." The <u>Sublett</u> court clearly states that the bankruptcy court must make "outcome determinative" factual findings. In this case, the specific value of the property is not outcome determinative. The outcome determinative factual question is simply whether the property is worth less than the first mortgage, and the Bankruptcy Court found that it was. Furthermore, Stephan has not made any showing that the Bankruptcy Court's finding that the property value was less than the first mortgage was clearly erroneous.

### D. Claim Classification

Stephan also makes a confusing and contradictory argument that the lien is "void" and should be stripped. (Appellant Br. at 8.) This argument goes beyond the scope of his original

motion to the Bankruptcy Court, in which he argued that the second mortgage was not entitled to a distribution because it was unenforceable.

At the hearing, he told that Bankruptcy Court that "Your Honor is overlooking an issue here. We're not trying to remove the claim totally out of bankruptcy . . . . They're unsecured. The question is can they receive a distribution from the debtor." (Hr'g Tr. 6:20-7:21.) Moreover, in his reply brief, he stated, "we never sought relief declaring Wells Fargo's claim to 'go away' or be zero." (Appellant Reply at 5.) His argument on appeal that the claim is void contradicts his prior statements.

Furthermore, the Court finds that the Bankruptcy Court properly classified Wells Fargo's claim. Section 506(a) of the Bankruptcy Code defines secured and unsecured claims for bankruptcy purposes. In re Johns, 37 F.3d 1021, 1023 (3d Cir. 1994). It provides:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

11 U.S.C. § 506(a). If, as in the present matter, "the value of the collateral securing an obligation is less than the amount of an allowed claim, it follows by definition that the claim is unsecured in the amount of that deficiency." In re Baker, 300

B.R. 639, 643 (Bankr. W.D. Pa. 2003). The unsecured nature of Wells Fargo's second mortgage claim means that "the precise amount of the distribution to which [Wells Fargo] is entitled must be determined, not that it is entitled to no distribution." In re Baker, 300 B.R. 639, 644 (Bankr. W.D. Pa. 2003). At the hearing, the Bankruptcy Court noted that "[t]here's a note, there's a mortgage, [Stephan is] treating it as unsecured in the plan. That's exactly what 506 does . . . it makes them an unsecured creditor . . . . But that doesn't make them go away." (Hr'g Tr. 9:21-10:3.)

The Bankruptcy Court's legal determinations regarding loan classification were correct. To the extent that Stephan raises issues regarding stripping or cramming down the second mortgage, those issues are not properly before the Court on this appeal.

### IV. CONCLUSION

The Court will affirm the Bankruptcy Court's May 20, 2013 Order. The accompanying Order will be entered.


| **February 5, 2014** | **s/ Jerome B. Simandle** |
| Date | JEROME B. SIMANDLE |
|  | Chief U.S. District Judge |